UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KENNISTON,<br><br>                       Petitioner,<br><br>v.<br><br>J. MCDONALD, Warden,<br><br>                      Respondent. | Case No.: 15-cv-2724-AJB-BGS<br><br>**ORDER:**<br>**(1) ADOPTING THE REPORT AND RECOMMENDATION (Doc. No. 21), and**<br>**(2) DISMISSING PETITIONER'S WRIT OF HABEAS CORPUS (Doc. No. 1)** |

Before the Court is Petitioner Kevin Kenniston's petition for Writ of Habeas Corpus. (Doc. No. 1.) In the Report and Recommendation ("R&R"), (Doc. No. 21), the Magistrate Judge recommended dismissing Kenniston's federal petition for writ of habeas corpus. (Doc. No. 21.) For the reasons stated herein, the Court **ADOPTS** the R&R and **DISMISSES** Kenniston's writ of habeas corpus.

## I.  BACKGROUND

After being found guilty of various crimes, Kenniston appealed to the California Court of Appeal arguing: (1) his due process rights were violated when the trial court refused to sever the charges; (2) the trial court improperly denied Kenniston's request to substitute retained counsel for appointed counsel; (3) his due process rights were violated when the prosecutor made improper comments to the jury; and (4) his right to effective

assistance of counsel was violated when defense counsel failed to object to the prosecutor's improper comments. (*See* Doc. No. 11-40.)

Kenniston submitted a "Supplemental Brief" to the appellate court, on his own behalf. (ECF No. 8 at Ex. A, 22–53.) In it, Kenniston argued the prosecutor failed to turn over exculpatory evidence (grounds one and three), there was insufficient evidence to support counts 1, 15, 18–20 and 22 (grounds two, four and seven), the court erred in permitting expert testimony (ground five) and the prosecutor committed misconduct during closing argument (ground six). (*See id.*) In a letter, the California Court of Appeal informed Kenniston that his pro se supplemental brief was being forwarded to his appellate counsel to determine what, if any, action should be taken. (*Id.*, Ex. B at 56.)

The appellate court ultimately affirmed Kenniston's conviction in an unpublished opinion. The court addressed only the claims raised in the brief submitted by Kenniston's appellate counsel. (*See* Doc. No. 11-45.)

Kenniston then submitted a "supplemental brief" to the California Supreme Court, to which he appears to have attached the supplemental brief he had attempted to submit to the Court of Appeal. (*See* Doc. No. 11-43.) Appellate counsel for Kenniston filed a petition for review, raising the same four claims as those presented to the appellate court. (Doc. No. 11-44.) The California Supreme Court issued an order stating "The Petitions for review are denied." (Doc. No. 11-46.)

Kenniston, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his San Diego Superior Court conviction in case number SCS247814. (Doc. No. 1.) As stated in the R&R, Kenniston raises ten claims:

> (1) his due process rights were violated when the state failed to turn over information about a prosecution witness; (2) his due process rights were violated because there was insufficient evidence to support his kidnapping conviction; (3) his due process rights were violated when the trial court permitted expert witness testimony and the prosecution failed to provide discovery regarding the expert witness; (4) his due process rights were violated because there was insufficient evidence to support his conviction on

counts 15 and 20; (5) his due process rights were violated because there was insufficient evidence to support the true findings on the allegations for impersonating a peace officer while committing a felony, pursuant to California Penal Code §§ 538d & 667.17 (counts 8, 10, 15, 20 and 22); (6) his due process rights were violated because there was insufficient evidence to support his convictions on counts 18 and 19; (7) his due process rights were violated when the prosecution failed to provide exculpatory documents to the defense; (8) his due process rights were violated by the failure to sever the charges against him; (9) his right to counsel was violated when the trial court denied his request for a continuance in order to substitute retained counsel; and (10) his Sixth Amendment rights were violated when he received ineffective assistance of both trial and appellate counsels.

(Doc. No. 21 at 18.)

In his "Notice of Exhaustion," Kenniston stated that while his federal petition has been pending before the Court, he has been seeking habeas review in the state courts. (Doc. No. 19.) Petitioner filed a petition for writ of habeas corpus in San Diego Superior Court. (*See* Notice, Doc. No. 19, Ex. A at 22.) In it, he raised 10 claims. (*See id.* at 23–30.) The San Diego Superior Court denied his habeas petition in a reasoned decision. (*See id.*) Kenniston then filed a petition with the California Court of Appeal, raising the same 10 claims. (*Id.*, Ex. B at 32–62.) The appellate court denied the petition in a reasoned decision. (*Id.* at 64–65.) Finally, Kenniston filed a petition for writ of habeas corpus in the California Supreme Court, which was denied without comment or citation. (*Id.* at 5.)

This Court denied Kenniston's motion for stay as moot. (Doc. No. 20.) Magistrate Judge Skomal submitted an R&R directing judgment be denied against Kenniston. (Doc. No. 21.) Kenniston objected. (Doc. No. 32.)

## II.    FACTUAL BACKGROUND

This case's factual background was thoroughly detailed in Magistrate Judge Skomal's R&R. (Doc. No. 21 at 2–12.) This Court fully incorporates by reference the factual background section of the R&R into this Order and will reference pertinent facts as necessary for the Court's analysis.

### III.  LEGAL STANDARD

The duties of the district court with respect to a magistrate's judge's R&R are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1). The district court must "make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980); *United States v. Remsing*, 874 F.2d 614, 617–18 (9th Cir. 1989).

As to portions of the report to which no objection is made, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001). Under such circumstances, the Ninth Circuit has held that failure to file objections only relieves the trial court of its burden to give de novo review to factual findings; conclusions of law must still be reviewed de novo. *See Robbins v. Carey*, 481 F.3d 1143, 1146–47 (9th Cir. 2007).

### IV.  DISCUSSION

In his objection, Kenniston makes five arguments: (1) his due process rights were violated when the prosecutor failed to turn over exculpatory evidence; (2) his due process rights were violated when he was convicted on certain counts based on insufficient evidence; (3) his due process rights were violated by the trial court's failure to sever the charges; (4) his Sixth Amendment right to counsel was violated when the trial court denied his request to substitute retained counsel for appointed counsel; and (5) his Sixth Amendment right was violated because both his trial and appellate counsel were ineffective assistance of counsel. (*See* Doc. No. 32.)

#### A. Brady Violation (Claims One and Seven)

In grounds one and seven, Kenniston argues his due process rights were violated when the prosecutor failed to turn over exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 82 (1963). (*Id.* at 52.)

4

In order to establish a *Brady* violation, a defendant must show three things: (1) the evidence was suppressed by the prosecution, either willfully or inadvertently, (2) the withheld evidence was either exculpatory or impeachment material, and (3) the evidence was material to the defense. *Benn v. Lambert*, 283 F.3d 1040, 1052–53 (9th Cir. 2002) (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Evidence is material under *Brady* only if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995). A "reasonable probability" means a probability "sufficient to undermine confidence in the outcome" of the trial. *Bagley*, 473 U.S. at 682; *United States v. Jernigan*, 492 F.3d 1050, 1054 (9th Cir. 2007) (finding the defendant must show that the government's suppression of the evidence undermines confidence in the trial's outcome).

In the present case, the crux of Kenniston's argument is that the prosecution withheld additional evidence from the defense in violation of *Brady*. (Doc. No. 32 at 52.) Specifically, Kenniston argues the purported material evidence was a communication between Mendez and a member of the district attorney's office. (*Id.* at 43.) Mendez is Kenniston's ex-wife, who testified about several incidents in where Kenniston became physically abusive and the counts involved alleged kidnapping and false imprisonment allegations. (Doc. No. 21 at 2–5.)

The Magistrate Judge stated that "[e]ven assuming arguendo that the prosecutor withheld information regarding a conversation between a District Attorney investigator and Mendez, Petitioner cannot establish a *Brady* violation because he has not shown the purported evidence was exculpatory or impeachment evidence, or that any such evidence was material." (Doc. No. 21 at 26.) In Kenniston's reply, he argues the evidence was newly remembered information by Mendez. (Doc. No. 32 at 24.) However, Kenniston failed to show what that "newly remembered information" was or whether it was material evidence.

In support of his argument, Kenniston cites to *United States v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996), stating that "[i]n making the requisite 'plausible showing' of the existence of exculpatory information, a defendant *must* 'identify the requested [] material

with some degree of specificity.'" In her signed affidavit, Mendez states only that she "talked more about the incident and how Mr. Kenniston returned me" with an employee at the district attorney's office. (Pet., Ex. A, Doc. No. 1-2 at 101.) However, no specifics are offered in Mendez's affidavit regarding the nature of the "additional information." Kenniston merely speculates the "newly remembered information" could have been favorable to the defense. (Doc. No. 32 at 43.) Accordingly, mere supposition as to what a witness told prosecutors cannot support a *Brady* claim. *Runningeagle v. Ryan*, 686 F.2d 758, 770 (9th Cir. 2012).

In the R&R, Judge Skomal states "to the extent there is any favorable information contained in the defense investigator's reports, it is not inconsistent with evidence already represented to the jury." (Doc. No. 21 at 27.) The R&R notes that Mendez returned to testify, stating "she had been drinking on the day of the incident and Kenniston did not want her to drive, contrary to her previous grand jury and trial testimony." (*Id*.) Thus, the R&R reasoned, "to the extent there is any favorable information contained in the defense's investigator reports, it is not inconsistent with evidence already presented to the jury." (*Id.*)

As discussed above, Kenniston has not shown that any such evidence was material under *Brady*. As such, Kenniston has not established that the evidence was favorable, much less material, to the defense. *See Runningeagle*, 686 F.2d at 770; *see also Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (rejecting *Brady* claims as too speculative).

The R&R's analysis came to the same outcome. Because we find the R&R's findings on this issue reasonable and well-analyzed, we support its conclusion and recommendation to **GRANT** Respondent's motion to dismiss on these claims and **DISMISS** claims one and seven.

### B. Insufficient Evidence (Claims Two, Three, Four, Five, Six)

In claims two, three, four, five, and six, Kenniston argues his due process rights were violated when he was convicted on certain counts based on insufficient evidence. (Doc. No. 32 at 102–14.) Specifically, he asserts there was insufficient evidence to support his convictions for: (1) kidnapping (ground two); (2) two counts of impersonation of a

public officer and detaining another (ground four); (3) testimony of expert witness Mitch Kojima (ground three); (4) five true findings regarding wearing or exhibiting a badge or insignia while impersonating a public officer and detaining another (ground five); and (5) one count of child abuse likely to cause great bodily harm or death and one count of child cruelty (ground six).

In denying Kenniston's habeas corpus petition, the appellate court denied all four insufficiency of evidence claims on procedural grounds, stating:

> Kenniston also challenges the sufficiency of the evidence supporting his conviction. "[C]laims of the insufficiency of evidence to support a conviction are not cognizable in a habeas corpus proceeding." *In re Reno*, 55 Cal. 4th 428, 505 (2012). . . . Although Kenniston asserts that exceptions to these procedural bars should apply to his petition, he does not establish a valid basis for such an exception.

(Doc. No. 21 at 32 (citing Notice, ECF No. 19, Ex. C at 64–65).) Judge Skomal agreed the claims are procedurally defaulted and thus barred from federal habeas review. (*Id.*) However, the R&R found it easier to dispose of the claims on the merits and thus went into great depth to discuss each claim for insufficient evidence. (*See id.*) Yet, in Kenniston's reply, he failed to specifically identify portions of the R&R to which he objected to regarding the insufficiency of evidence claims, much less state any specific basis for any objection. Instead, Kenniston merely repeated the same arguments made in his federal habeas petition. (*See* Doc. No. 32 at 102–14.) Kenniston's reply simply recanted the facts of his case but failed to provide any specific objections to the R&R. (*See id.*)

For that reason, the Court may assume the correctness of the Magistrate Judge's findings of fact and decide the motion on the applicable law as to portions of the report to which no objection is made. *Campbell*, 501 F.2d at 206. After carefully reviewing the relevant papers, including the Magistrate's R&R and Kenniston's objections, the Court finds the R&R employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the R&R is accepted and adopted for the reasons set forth therein, and Kenniston's claims two, three, four, five, and six are **DENIED**.

### C. Severance (Ground Eight)

In ground eight, Kenniston argues his due process rights were violated by the trial court's failure to sever the charges. (Doc. No. 21 at 54.) Specifically, he contends his due process rights were violated when the trial court denied his request that counts one and two (Mendez counts) be severed from counts 3–6, 23, 26–32 (Green counts), and that both these cases also be severed from counts 7–10 and 13–22 (impersonation and child endangerment counts). (*Id*.)

Case number one involves the kidnapping and false imprisonment counts where Mendez, Kenniston's ex-wife, was the victim, (Mendez counts). Case number two is where Jessica G., as well as Kylie G. (Jessica's daughter) were the victims and it involved cruelty of a child and disobeying restraining orders, (Green counts). Case number three concerns impersonation of an officer with multiple alleged victims, where Kylie G. was a witness to several of those incidents, (impersonation counts).

Penal Code section 954 provides in part:

> An accusatory pleading may charge two or more different offenses connected together in their commission, or . . . of the same class of crimes or offenses. . . . [P]rovided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately.

*Aydelott v. Superior Court*, 7 Cal. App. 3d 718, 722 (1970); *see People v. Lucky*, 45 Cal. 3d 259, 276 (1988). In determining whether a trial court abused its discretion under section 954 in declining to sever properly joined charges, "we consider the record before the trial court when it made its ruling" and focus on "certain criteria [that] have emerged to provide guidance in ruling upon and reviewing a motion to sever trial." *People v. Soper*, 45 Cal. 4th 759, 774 (2009). "First, we consider the cross-admissibility of the evidence in hypothetical separate trials. [Citation]. If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges."

*Soper*, 45 Cal. 4th at 774–75.

Once criminal charges are properly joined, the "burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." *Id*. at 773. To meet this burden, a defendant must show the ruling fell "outside the bounds of reason." *Id*. at 774.

In his reply, Kenniston argues that "there was no nexus between the charges related to Mendez and Green and the incidents of alleged police impersonation." (Doc. No. 32 at 126.) Kenniston's main argument revolves around the allegation that "none of the alleged incidents of police impersonation involved violence, nor domestic partner, or the same class of victim(s), or same facts." (*Id*.)

The California Court of appeal held that the trial court did not err when refusing to sever the counts "because the record contains ample evidence supporting the finding that both counts were of the 'same class of crimes or offenses' under section 954." (Doc. No. 21 at 58.) The R&R agreed, reasoning first that misjoinder is not a constitutional violation and second that even if it were, Kenniston did not show actual prejudice or harm. (*Id*. at 62–64.) Both cases involved some level of domestic violence and both cases relied on testimony from the victim. Finally, the R&R states that because the jury acquitted Kenniston of the impersonation and child abuse charges, the alleged inappropriate joinder did not have a "substantial and injurious effect or influence on the jury's verdict." (*Id*. at 64.)

In Kenniston's objection, he merely repeats the same arguments he made in his habeas petition and failed to provide any specific objections to the R&R's analysis. (*See* Doc. No. 32 at 119–32.) Thus, the Court finds the R&R's conclusion well-reasoned and agrees that because both Mendez counts and Jessica G. counts possessed common characteristics and attributes, their joinder was proper. *See Alcala v. Superior Court*, 43 Cal. 4th 1205, 1220 (2008); *Aydelott*, 7 Cal. App. 3d at 722 (noting that "because consolidation or joinder of charged offenses ordinarily promotes efficiency, that is the course of action preferred by the law."). Therefore, we **DENY** Kenniston's claim on

9

ground eight.

**D. Denial of Continuance and Substitution of Counsel (Ground Nine)**

In claim nine, Kenniston argues his Sixth Amendment right to counsel was violated when the trial court denied his request to substitute retained counsel for appointed counsel. (Doc. No. 32 at 154.) A defendant "who does not require appointed counsel" has the right under the Sixth Amendment "to choose who will represent him [or her]." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).

> That right, however, is "not absolute," *People v. Verdugo*, 50 Cal. 4th 263, 311 (2010), and "can be forced to yield if the court determines the appointment at issue will result 'in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" [Citations.] A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness [citation] and against the demands of its calendar" [citation].

*Gonzalez-Lopez*, 548 U.S. at 152. The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id*. A "disruption of the orderly processes of justice" may result from a defendant's untimely request to discharge counsel. *See People v. Ortiz*, 51 Cal. 3d 975, 983 (1990).

The R&R notes that on October 22, 2012, attorney Mark Edelman specially appeared on behalf of Kenniston, requesting he be substituted in as Kenniston's new counsel. (Doc. No. 21 at 65.) Edelman noted he had been misinformed that Kenniston was then representing himself and that there had been no prior continuances in the case, when in fact Kenniston's trial had been continued at least seven times. (*Id*.) If appointed, Edelman estimated he could be ready to start trial the last week of November 2012. (*Id*.) However, after learning the number of proposed witnesses the People intended to call, Edelman revised that estimate during the hearing and said he "maybe" would be ready to start trial in the middle of December. (*Id*.)

In denying Kenniston's motion to substitute in new counsel, the trial court looked at the history of the case and found that if Edelman was appointed, there would be a "great

disruption or delay" as a result of "new counsel coming up to speed," as Edelman "would not be ready until possibly mid December [sic]" given the complexity of the case; and that, unlike Edelman, Kenniston's current defense counsel and the People were prepared to start trial that day. (*Id*.)

In Kenniston's reply, he argues that "the trial court did not state the denial was for calendar issues or state inconvenience to the jury; as no jury pool had been called for voir dire." (Doc. No. 31 at 154.) He goes on to argue there was no inconvenience to potential witnesses, and the trial court had no grounds for denial of counsel substitution. (*Id*.)

However, the Court agrees with the R&R's finding that the trial court properly exercised its discretion when it found Kenniston's eleventh-hour request to substitute in new counsel would have adverse effects on the orderly administration of justice, as it would have prompted yet another delay of trial of at least close to two months—and likely much longer, given the complexity of the case and given Edelman had virtually no familiarity with the case when he was making (and already revising during the same hearing) his estimate of when he could be ready. (Doc. No. 21 at 67.) Thus, the Court agrees with the trial court's denial of Kenniston's request to substitute retained counsel and **DENIES** ground nine.

### E. Ineffective Assistance of Trial and Appellate Counsels (Ground Ten)

In ground ten, Kenniston argues both trial and appellate counsel were ineffective, in violation of his Sixth Amendment rights. (*See* Doc. No. 32 at 148.)

#### 1. Trial Counsel

Specifically, Kenniston argues his trial counsel was ineffective because he failed to move for a new trial based on the prosecution's alleged failure to turn over exculpatory evidence concerning Mendez. (Doc. No. 21 at 76–80.) Additionally, Kenniston contends his trial counsel failed to adequately object when jurors reported overhearing two witnesses talking outside the courtroom. (*Id*. at 80–81.) However, Kenniston simply recites the facts and makes the same arguments raised in his habeas petition. Kenniston does not provide any basis for his objections and instead attempts to re-litigate the same issues. (Doc. No.

32 at 152–54.)

"When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a de novo review." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, identify the portions of the proposed findings, recommendations, or report to which it has an objection and the basis for the objection. *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Here, the R&R addresses several issues that Kenniston raised in his habeas petition including defense counsel's alleged failure to object to the prosecution's references to the grand jury proceedings; defense counsel's failure to object when jurors reported overhearing two witnesses talking outside the courtroom; and defense counsel's failure to request new trial based on a *Brady* violation. (Doc. No. 21 at 71–80.) Reviewing this analysis, the Court finds Kenniston failed to establish any prejudice in his claims for ineffective assistance of counsel. Thus, the Court agrees with Magistrate Judge Skomal's recommendation. (Doc. No. 21 at 71–84.)

### 2. Appellate Counsel

In his habeas petition, Kenniston argues his appellate counsel was ineffective when he failed to file two *Brady* violations. (Doc. No. 32 at 149.) Additionally, Kenniston argues appellate counsel failed to review the record in whole thus showing lack of diligence. (*Id*. at 150.) Specifically, Kenniston argues the Grand Jury transcripts were made an exhibit at trial and therefore were worthy to review as evidence. (*Id*.) It is clearly established that "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (citing *Smith v. Murray*, 477 U.S. 527, 535–36 (1986)).

In his reply, Kenniston argues that by not filing these *Brady* violations, his appellate counsel "fell below an objective reasonableness of representation and thus demonstrated a

level of incompetence in his representation." (Doc. No. 32 at 149.) He goes on to argue the withheld evidence would have led to an acquittal. (*Id*.)

Generally, in his R&R, Magistrate Judge Skomal rendered the following: "First, Kenniston argues appellate counsel was ineffective in failing to object to an untimely brief submitted by Respondent on appeal." (Doc. No. 21 at 81.) In a letter written to Kenniston, appellate counsel wrote that "'while [Respondent's] brief was technically one day late,' it was likely due to an inadvertent calendaring mistake" and that "[u]nder these circumstances the Court of Appeal is not going to strike the brief based on a technicality, and I will not be filing a motion with the court." (*Id*.) As the R&R correctly noted, appellate counsel considered the matter and determined any motion to strike would be denied by the appellate court. Additionally, Kenniston did not make any showing that objecting to an untimely brief submitted by Respondent resulted in prejudice. As such, appellate counsel's performance was reasonable. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Second, Kenniston argues his appellate counsel was ineffective by failing to raise the *Brady* claim regarding the "additional information" Mendez allegedly gave to the District Attorney's office. (Doc. No. 21 at 82.) But because his *Brady* claim lacked merit, as discussed *supria* and in the R&R, Kenniston "has not shown appellate counsel's decision not to raise it on appeal was unreasonable, nor has [Kenniston] established that had appellate counsel raised the issue, he would have prevailed on appeal." (*Id*.; s*ee Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (finding that appellate counsel was not ineffective for failing to raise issue and defendant suffered no prejudice on account on counsel's performance).)

Third, Kenniston claims appellate counsel was ineffective for failing to review the complete record. (Doc. No. 21 at 83.) The R&R stated that "under California law, issues regarding the grand jury proceedings are not appealable absent a showing the trial was fundamentally unfair. [citation]. As such it was not unreasonable for appellate counsel to forgo their review." (*Id.* (citing *People v. Pompa-Ortiz*, 27 Cal. 3d 519, 529 (1980); *Miller*, 882 F.2d at 1434.) Moreover, Kenniston failed to establish that appellate counsel's failure

to review the complete record resulted in prejudice.

In Kenniston's reply, instead of citing objections to specific portions of the proposed findings and recommendations, Kenniston—again—merely submitted a revised version of the same arguments it presented to the Magistrate Judge. (Doc. No. 32 at 149–51.) Moreover, "[t]he objections must specifically identify those findings or recommendations to which objections are being made. Frivolous, conclusive or general objections need not be considered by the district court." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). This, like much of Kenniston's objection, is an improper attempt to rehash his entire argument and have this Court conduct a duplicative review where nearly every issue presented to the Magistrate Judge was raised for a second time on objection. *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("parties are not to be afforded a 'second bite at the apple' when they file objections to a Report and Recommendation, as the 'goal of the federal statute providing for the assignment of cases to magistrates is to 'increas[e] the overall efficiency of the federal judiciary.'" (quoting *McCarthy v. Manson*, 554 F. Supp. 1275, 1286 (D. Conn. 1982))). Accordingly, the Court adopts the proposed findings for the reasons stated in Magistrate Judge Skomal's R&R and **DENIES** Kenniston's ground ten.

### F. Certificate of Appealability

When a district court enters a final order adverse to the applicant in a habeas corpus proceeding, it must either issue or deny a certificate of appealability, which is required to appeal a final order in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 330 (2003) (quoting 28 U.S.C. § 2253(c)(2)). Under this standard, the petitioner must demonstrate that "reasonable jurists could debate whether [] the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citation and internal quotation marks omitted). Here, the Court finds that reasonable jurists could not debate the

Court's conclusion to dismiss with prejudice Kenniston's claims and therefore **DECLINES** to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons stated herein, the Court finds the R&R was well-reasoned, incredibly thorough, and contains no clear error. Thus, the Court **ADOPTS** the R&R in its entirety, (Doc. No. 21), **GRANTS** Respondent's dismissal motion, (Doc. No. 21), and **DISMISSES** Kenniston's federal petition for habeas corpus. (Doc. No. 1.)

**IT IS SO ORDERED.**

Dated: June 24, 2019

Hon. Anthony J. Battaglia
United States District Judge